IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| HARBORWALK, LP; | § | Case No. 10-80043 |
| HARBORWALK MARINA OPERATING | § | Case No. 10-80044 |
| COMPANY, LTD.; | § | |
| HARBORWALK SALES CORPORATION | § | Case No. 10-80045 |
| | § | |
| DEBTORS. | § | JOINT ADMINISTRATION |
| | § | REQUESTED |

**DEBTORS' EMERGENCY MOTION FOR ORDER
(I) AUTHORIZING CONTINUED USE OF EXISTING BUSINESS
FORMS AND RECORDS; (II) AUTHORIZING MAINTENANCE OF
EXISTING CORPORATE BANK ACCOUNTS AND CASH MANAGEMENT
SYSTEM; AND (III) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(b)**

The above-captioned debtors and debtors-in-possession (together, the "Debtors"), by and through their proposed undersigned attorneys, file this Emergency Motion for an Order (i) Authorizing Continued Use of Existing Business Forms and Records; (ii) Authorizing Maintenance of Existing Corporate Bank Accounts and Cash Management System; and (iii) Waiving the Requirements of 11 U.S.C. § 345(b) (the "Motion") and in support thereof, respectfully represent as follows:

**I. JURISDICTION AND VENUE**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**II. BACKGROUND**

2.  On January 25, 2010 (the "Petition Date"), the Debtors Harborwalk, LP, Harborwalk Sales Corporation ("Harborwalk Sales"), and Harborwalk Marina Operating Company, Ltd. ("Harborwalk Operating") filed voluntary petitions for relief under chapter 11,

Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Galveston Division (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors-in-possession. No trustees or examiners have been appointed in these cases.

3. With their original petitions, the Debtors contemporaneously filed a Notice of Designation as Complex Chapter 11 Bankruptcy Case.

4. The Debtors are engaged primarily in the business of developing and selling luxury residential real property (as a master-planned community) consisting of approximately 625 acres on the north shore of West Galveston Bay in Galveston County, Texas (the "Property" or the "Project"). The Property now offers luxury waterfront living and is composed of approximately 380 residential lots, a 150-slip marina, and a yacht club. The Debtors sell vacant lots to builders and individual buyers. Because the Property offers many recreational opportunities, it is particularly attractive to prospective buyers in the market for second homes.

5. Harborwalk, LP is a limited partnership, with Harborwalk GP, LLC[1], a non-debtor, holding 1% as the general partner, and Harborwalk Investments, LLP[2], a non-debtor, holding 99% as limited partner. Harborwalk LP owns the club, store, and marina at the Property.

6. Harborwalk Sales is a wholly-owned subsidiary of Harborwalk, LP. Harborwalk Sales holds a license with the Texas Real Estate Commission and operates the developer sales and re-sales operation.

7. Harborwalk Operating is a limited partnership with Harborwalk Marina GP, LLC[3], a non-debtor, holding 1% as the general partner, and Harborwalk LP holding 99% as the

---

[1] Harborwalk GP, LLC is wholly owned by Harborwalk Investments, LLP. *See* footnote 2, *infra*.

[2] Harborwalk Investments, LLP is a general partnership electing to operate as a limited liability partnership with sixteen (16) partners.

limited partner. Harborwalk Operating operates the yacht club, store, and marina located on the Property. Harborwalk LP owns these facilities and is obligated to make all cash contributions.

8. Harborwalk LP was formed in 2002 to develop the Property, and it obtained a $12 million development loan (the "Development Loan") from Riverway Bank to begin funding the Project. The Development Loan is secured by the Property. From 2002 to 2007, the development of the Property proceeded generally in accordance with the plan and expectations of Harborwalk, LP. During this time, the development was modified on three occasions as Harborwalk, LP opened additional sections of the Property. In 2006, the Development Loan was extended to $30 million. During this period, Riverway Bank was acquired by Texas State Bank, which in turn was acquired in December 2007, by the Spanish bank holding company BBVA. BBVA has since begun operating as BBVA Compass ("Compass").

9. Approximately 380 lots in the Property have been completed and approximately 275 lots in the Property have been sold since the Project's inception. However, in 2007 the real estate market began to suffer, and in 2008, lot sales slowed drastically. At the same time, the Harborwalk, LP continued to incur expenses in connection with building a yacht club and marina on the Property. The costs of these improvements coupled with low sales made it necessary for Harborwalk, LP to draw down all of the funds under the Development Loan.

10. In anticipation of a long-term depression of real estate prices and demand, Harbowalk, LP and Compass reached an agreement whereby Harborwalk LP would contribute $10 million in equity to be used to reduce the principal amount of the Development Loan to $20 million. In consideration of this equity contribution and pay-down, Harborwalk, LP requested that Compass (i) extend the Development Loan for five years; (ii) reduce the interest rate; and

---

[3] Harborwalk Marina GP, LLC is a limited liability company owned by Lynn, Evan, Alan, and Amy Watkins.

(iii) allow Harborwalk, LP to make draws on the loan up to a $30 million cap. Harborwalk, LP communicated to Compass that its willingness to make such an equity contribution was contingent on these terms. Compass accepted this offer and a refinancing on substantially these terms was close in June 2008. At that time, Compass engaged an appraiser who opined that the fair market value of the Property collateralizing the Development Loan was $62 million.

11. On September 10, 2008, the Property suffered substantial damage as a result of Hurricane Ike striking the Houston-Galveston area. Although the physical damage to the Property was quickly repaired, the effect of Hurricane Ike and the real estate exigency greatly depressed the market for the sale of the Property's individual lots.

12. Since the re-financing in June 2008, Harborwalk, LP has complied with all terms contained in the Development Loan documents and has drawn approximately $7 million of the $10 million available. All of these draws have been approved by Compass and the last draw was funded on December 4, 2009.[4]

13. However, when Harborwalk, LP submitted a draw on December 7, 2009, Compass refused to fund the draw based on Compass' allegation that a "material adverse change" had occurred and that the Development Loan was in default because the Property had allegedly drastically declined in value since the refinancing in 2008.[5]

14. As a result of Compass' refusal to fund the draw request, Harborwalk, LP has been forced to discontinue the bulk of the operations with regard to the Property. On January 7,

---

[4] During the course of the development of the Property, Harborwalk, LP has advanced funds to Hitchcock TIRZ #1 and Flamingo Isles MUD of Galveston County to which it is entitled to reimbursement pursuant to certain terms and conditions. As of January 7, 2010, the amount owed to Harborwalk, LP as reimbursement for the advances is $7.4 million and $19.3 million, respectively (these are face value amounts (i.e. not necessarily present value) and do not include accrued interest). The rights to these reimbursements are collaterally assigned to Compass as additional security for the Development Loan.

[5] The appraisal relied upon by Compass was performed by CB Richard Ellis and is dated September 21, 2009. The appraisal opined that the value of the remaining parcels of the Property owned by Harborwalk, LP was $25.2 million. The appraisal expressly excludes more than $26.7 million in receivables due and owing from TIRZ and MUD that are described in footnote 4, *supra*.

2010, Harborwalk filed a complaint against Compass in the District Court of Galveston County, 10th Judicial District, Cause No. #10-CV-0023 (the "Compass Lawsuit").  As part of the Compass Lawsuit, Harborwalk, LP has asserted causes of action against Compass for breach of contract, breach of fiduciary duty and duty of good faith, fraud, and negligent misrepresentation.  Harborwalk, LP is seeking the recovery of all actual damages, punitive damages, interest, and attorneys' fees to the extent allowed by law.  Additionally, Harborwalk, LP is seeking cancellation of its debt and rescission of the Development Loan agreement as equitable remedies.

15.     Compass' refusal to fund the Development Loan pursuant to its 2008 terms has forced the Debtors to file for bankruptcy protection in order to obtain, through DIP Financing, the funds they need to continue operations and successfully emerge as reorganized entities.

16.     As of the Petition Date, the Debtors employed a total of six (6) contract employees.  Harborwalk Operating employs five (5) contract employees and Harborwalk Sales employs one (1) contract employee.  In the months prior to the bankruptcy filing, the Debtors slowed down, and to some extent shut down, portions of their business.  As a result, the Debtors laid off several of their employees.  However, with available DIP Financing, the Debtors intend to re-start most of their business operations and therefore plan on hiring additional employees.

17.     Prior to commencing these cases, in the ordinary course of their businesses, the Debtors used a cash management system (the "Cash Management System") to efficiently collect, transfer, and disburse funds generated by their business operations.  The Cash Management System consists of the following accounts:

**Harborwalk, LP**
**Bank Accounts**

(a)   Account No.  xxxxx-379, at Texas First Bank (the "HW LP Operating Account")

(b)   Account No. xxxxx-338, at Compass Bank (the "Compass Escrow Account")[6]

**Harborwalk Operating**
**Bank Accounts**

(a)   Account No. xxxx-5333, at Compass Bank (the "Membership Deposit Account")[7]

(b)   Account No. xxxx-2341, at Texas First Bank (the "Operating Account")

(c)   Account No. xxxx-5341, at Compass Bank (Debtors intend to close this account)

**Harborwalk Sales**
**Bank Accounts**

Account No. xxxx-761, at Amegy Bank (the "HW Sales Operating Account")

18.   The foregoing accounts of each of the Debtors shall be collectively referred to herein as the "Accounts."

### III.  RELIEF REQUESTED AND BASIS THEREFORE

19.   The Debtors request, pursuant to §§ 105(a), 345(b), 363(c), and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the entry of an order (i) authorizing the Debtors to continue using their existing business forms and records; (ii) authorizing the Debtors to maintain their bank accounts and Cash Management System; and (iii) waiving the requirements of 11 U.S.C. § 345(b).

---

[6] This bank account was set up by Compass, and Harborwalk, LP is required to escrow in this account ten percent of any public financing receivables that are collected.  There are currently no funds in this account and Harborwalk, LP does not intend to use this account during its bankruptcy case.  The account will remain open to comply with Harborwalk, LP's obligations to Compass.

[7] The membership deposits for the Harborwalk Yacht Club are "escrowed" in this account.

A.	**The U.S. Trustee Guidelines and Section 345(b) of the Bankruptcy Code**

20.	The Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") has established its Guidelines for Chapter 11 Debtors-in-Possession (the "Guidelines") in order to supervise the administration of chapter 11 cases. The Guidelines require chapter 11 debtors-in-possession to, among other things, close all existing bank accounts and open new debtor-in-possession ("DIP") bank accounts, establish one DIP account for all estate monies required for the payment of taxes (including payroll taxes), maintain a separate DIP account for cash collateral, and obtain checks for all DIP accounts that bear the designation, "debtor-in-possession," the bankruptcy case number, and the type of account. The Guidelines also require debtors to close their books and records as of the petition date and to open new books and records. The Guidelines are designed to provide, among other things, a clear demarcation between pre-petition and post-petition transactions and operations, which would, in theory, prevent the inadvertent post-petition payment of a pre-petition claim.

21.	As set forth below, the Debtors seek a waiver of certain requirements of the Guidelines. The Debtors' operations would be harmed by the disruption, confusion, delay, and cost that would most certainly result from rigid compliance with the Guidelines.

22.	Section 345(b) of the Bankruptcy Code provides as follows:

> Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested–
>
> (1)	a bond–
>
> > (A)	in favor of the United States;
> >
> > (B)	secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

    (C)  conditioned on–

      (i)  a proper accounting for all money so deposited or invested and for any return on such money;

      (ii)  prompt repayment of such money and return; and

      (iii)  faithful performance of duties as a depository; or

  (2)  the deposit of securities of the kind specified in section 9303 of title 31;

unless the court for cause orders otherwise.

11 U.S.C. § 345(b).

23.  Although the Debtors believe their Account with Compass Bank, Texas First Bank, and Amegy Bank satisfy § 345(b), out of an abundance of caution, the Debtors also request a waiver, to the extent necessary, of the requirements of § 345(b) of the Bankruptcy Code.

**B.**  **Existing Business Forms and Records**

24.  The Debtors seek a waiver of the Guidelines' requirement that they open a new set of books and records as of the Petition Date.  Opening a new set of books and records would create unnecessary administrative burdens and hardship and would cause unnecessary expense, utilization of resources, and delay.  The Debtors, in the ordinary course of their business, use many invoices, stationery, and other business forms.  By virtue of the nature and scope of the business in which the Debtors are engaged and the numerous other parties with whom they deal, the Debtors need to use their existing business forms without alteration or change.  Printing new business forms would take an undue amount of time and expense.  Accordingly, the Debtors respectfully request that they be authorized to continue to use their existing business forms and to maintain their existing business records.

C.       **Continued Use of Bank Accounts and Cash Management System**

25.     The Debtors respectfully request authority to maintain the Accounts and the Cash Management System in accordance with their usual and customary practices to ensure a smooth transition into chapter 11 with minimal disruption to operations.  The Debtors also request authority to close any of the Accounts if, in the exercise of their business judgment, the Debtors determine that such action is in the best interest of their estates.[8]

26.     In order to conduct their post-petition business, the Debtors need to be able to issue checks to vendors, service providers, employees, and others.  To open new accounts and obtain checks for those accounts will cause delay and disruption to the Debtors' business and a delay in receipt of funds needed for the Debtors' operations.  The Debtors request authorization to use, in their present form, existing checks and other business forms related to their Accounts; provided however, that upon depletion of the Debtors' current supply of such checks and forms, the Debtors will have the "debtor-in-possession" designation added to such checks and forms only if required.

27.     The Debtors' Cash Management System constitutes an ordinary course, essential business practice providing significant benefits to the Debtors including, among other things, the ability to (i) control funds, (ii) ensure the availability of funds when necessary, and (iii) reduce costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information.  Any disruption of the Cash Management System could have a severe and adverse impact upon the Debtors' reorganization efforts.

28.     The relief requested in this motion is vital to ensuring the Debtors' seamless transition into bankruptcy.  Authorizing the Debtors to maintain their Cash Management System,

---

[8] Harbowalk Operating intends to close an account (Account No. xxxx-5341) at Compass Bank.

as modified, will avoid many of the possible disruptions and distractions that could divert the Debtors' attention from more pressing matters during the initial days of these chapter 11 cases.

29. No checks issued prior to the Petition Date will be honored, except as otherwise provided by separate order of this Court. The Debtors reserve their rights pursuant to § 549 of the Bankruptcy Code with respect to any check issued pre-petition that is inadvertently honored post-petition. The Debtors will continue to maintain records respecting all transfers between and among the Accounts so that all transactions can be ascertained after they have occurred.

### D.   Waiver of Requirements of 11 U.S.C. § 345(b)

30. Pursuant to § 105(a) of the Bankruptcy Code, the Debtors seek a waiver of the requirements of § 345(b) of the Bankruptcy Code. As discussed above, the Accounts are maintained with financial institutions that are financially stable, however, out of an abundance of caution, the Debtors request a waiver of the requirement to comply with § 345(b)'s investment guidelines, if necessary, as the deposit of funds with Texas First Bank, Compass Bank and Amegy Bank should pose no substantial risk to the Debtors' estates or creditors.

31. Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money of estates, such as the Debtors' cash, in a manner that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).

32. Due to the significant amounts of money that may be in the Accounts from time to time, it would take a large amount of time for the Debtors to locate and determine, where necessary, appropriate alternative accounts that satisfy § 345(b). Requiring the Debtors to change their deposits and other procedures could result in harm to the Debtors, their estates, and creditors because such change would disrupt the Cash Management System. Conversely, the

Debtors' estates and creditors will not be harmed by the Debtors' maintenance of the status quo because of the relatively safe and prudent practices already utilized by the Debtors.

33. For each of the foregoing reasons, a waiver of the requirement to comply with the investment guidelines set forth in § 345(b) should not pose any risk to the Debtors' estates.

## IV.  APPLICABLE AUTHORITY

34. Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts have long recognized that the power granted by § 105(a) was expressly meant to be exercised to effectuate the rehabilitation of the debtor. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 16 (1977)). The relief requested in this Motion is critical to the Debtors' successful reorganization or liquidation, and is justified under § 105(a).

35. Extensive authority supports the relief the Debtors seek in the Motion. In other chapter 11 cases, courts have recognized that strict enforcement of the United States Trustee requirements does not always serve the purposes of a chapter 11 bankruptcy. Accordingly, courts have often waived such requirements and replaced them with alternative procedures. *See, e.g.*, In *re Sterling Chemicals Holdings, Inc.,* Case No. 01-37805 (Bankr. S.D. Tex. July 18, 2001); *In re TransCom USA Mgmt. Co.,* Case No. 01-35158 (Bankr. S.D. Tex. May 10, 2001); *In re Stage Stores, Inc.,* Case No. 00-35078 (Bankr. S.D. Tex. June 20, 2000).

36. Additionally, § 363(c)(1) of the Bankruptcy Code authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of § 363(c)(1) of the Bankruptcy Code is to provide a debtor-in-possession with the flexibility to engage in the ordinary course transactions

required to operate its business without unneeded oversight by its creditors or the Court. *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Git-N-Go, Inc.*, 322 B.R. 164, 171 (Bankr. N.D. Okla. 2004); *In re Enron Corp.*, No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003); *In re Atlanta Retail, Inc.*, 287 B.R. 849, 856 (Bankr. N.D. Ga. 2002); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997). Included within the purview of § 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, the Debtors seek authority under § 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement, of cash pursuant to their Cash Management System as described above.

## V.  NOTICE

37.     Notice of this Motion has been or will be provided to the United States Trustee for the Southern District of Texas, the Debtors' known or alleged secured creditors, the 30 largest unsecured creditors of the Debtors (on a consolidated basis), the United States Attorney's Office for the Southern District of Texas, the Internal Revenue Service, any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and any such other government agencies to the extent required by the Bankruptcy Rules and Local Rules. The Debtors submit that no further notice of this Motion is required.

WHEREFORE, premises considered, the Debtors respectfully request that the Court grant the Motion, authorize the Debtors to continue using their existing business forms and records, authorize the Debtors to maintain their existing corporate bank accounts and cash management system, waive the requirements of 11 U.S.C. § 345(b), and grant such other and further relief as is just and proper.

Dated: January 25, 2010

        Respectfully submitted,

        **BRACEWELL & GIULIANI LLP**

    By:  */s/ Marcy E. Kurtz*
        Marcy E. Kurtz
        Texas Bar No. 11768600
        Marcy.Kurtz@bgllp.com
        William A. (Trey) Wood III
        Texas Bar No. 21916050
        Trey.Wood@bgllp.com
        Chris S. Tillmanns
        Texas Bar No. 24060730
        Chris.Tillmanns@bgllp.com
        Bracewell & Giuliani LLP
        711 Louisiana, Suite 2300
        Houston, Texas 77002
        Telephone:   (713) 223-2300
        Facsimile:   (713) 221-1212

        **PROPOSED ATTORNEYS**
        **FOR THE DEBTORS**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been served on the parties listed in the attached Service List via electronic means as listed on the court's ECF noticing system or by regular U. S. First Class Mail, and by electronic mail or facsimile as indicated, on this 25th day of January, 2010.

By: /s/ Marcy E. Kurtz<br>
Marcy E. Kurtz