IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| HARBORWALK, LP; | § | Case No. 10-80043 |
| HARBORWALK MARINA OPERATING | § | Case No. 10-80044 |
| COMPANY, LTD.; | § | |
| HARBORWALK SALES CORPORATION | § | Case No. 10-80045 |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

### NOTICE OF FILING OF EXHIBIT A TO DEBTORS' OBJECTION TO COMPASS BANK'S DIP FINANCING PROPOSAL
(Relates to Dkt. Nos. 25 and 26)

PLEASE TAKE NOTICE that Exhibit A to the Debtors' Objection to Compass Bank's DIP Financing Proposal [Dkt No. 26] is attached hereto.

Dated: January 29, 2010

    Respectfully submitted,

    **BRACEWELL & GIULIANI LLP**

    By: /s/ William A. Wood, III
        Marcy E. Kurtz
        Texas Bar No. 11768600
        Marcy.Kurtz@bgllp.com
        William A. Wood, III
        Texas Bar No. 21916050
        Trey.Wood@bgllp.com
        Chris S. Tillmanns
        Texas Bar No. 24060730
        Chris.Tillmanns@bgllp.com
        Bracewell & Giuliani LLP
        711 Louisiana, Suite 2300
        Houston, Texas 77002
        Telephone:   (713) 223-2300
        Facsimile:    (713) 221-1212

    **PROPOSED ATTORNEYS FOR THE DEBTORS**

CAUSE NO. 10CV0023

| | | |
|---|---|---|
| HARBORWALK, LP | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| COMPASS BANK D/B/A BBVA COMPASS | § | 10 JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF THE COURT:

Harborwalk, LP ("Plaintiff") file this Original Petition complaining of Compass Bank d/b/a BBVA Compass ("Defendant").

### I. DISCOVERY CONTROL PLAN: REQUEST FOR DISCLOSURES

Pursuant to Rule 190.2 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under Level 2 of this Rule.

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant is requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2.

### II.

### PARTIES

Plaintiff is a Limited Partnership doing business in Galveston County, Texas.

Defendant Compass Bank d/b/a BBVA Compass ("Compass") is an Alabama corporation doing business in Texas. Said Defendant may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

### III. JURISDICTION AND VENUE

Mandatory venue for this action lies in Galveston County, Texas, pursuant to Tex. Civ. Prac. Rem. Code Ann., on the basis that the land and title to the land is in Galveston County and the cause

of action accrued in Galveston County, Texas. Jurisdiction is proper since Plaintiff's damages exceed the minimum jurisdictional limits of this court.

## IV. ASSUMED NAMES

Pursuant to Rule 28 of the Texas Rules of Civil Procedure, Plaintiff hereby gives Defendant notice that it is being sued in all of its businesses or common names regardless of whether such businesses are partnerships, unincorporated associations, individuals, entities, and private corporations.

## V.

## FACTUAL BACKGROUND

The Plaintiff was formed in 2002 to develop a certain parcel of property containing approximately 815 acres on the north shore of West Galveston Bay in Galveston County, Texas (the "Property" or the "Project").

At that time the Plaintiff obtained a $12 million development loan from Riverway Bank.

From 2002 to 2007, the development of the property proceeded generally in accordance with the plan and expectations of the Plaintiff. During this time the development was modified on three occasions as the Plaintiff opened additional sections of the Project. At the third renewal in 2006, the loan amount was extended to $30 million. During this period Riverway Bank was acquired by Texas State Bank which was in turn acquired in December, 2007 by the Spanish bank holding company, BBVA. Later the Bank was merged with other units of BBVA and now operates as BBVA Compass ("Compass Bank").

Beginning in 2007 and continuing into 2008 lot sales began to slow dramatically. By June, 2008, the developer had completed approximately 400 finished lots and sold 300 lots, generating approximately $50 million in sales proceeds. During this time the developer also completed a yacht

club and marina on the property. The cost of these improvements and the slow down in sales had caused the Plaintiff to draw down all of the funds available under the development loan.

In the spring of 2008, the partners in the Plaintiff decided that an additional equity infusion would be necessary to complete the development of the Property. The Plaintiff's partners also felt they needed a substantial extension of the loan term to see the Project through what they anticipated would be a prolonged downturn in the real estate market.

In the Fall 2007, the Plaintiff approached Compass Bank and/or its predecessor requesting a modification of the development loan. The Plaintiff offered to contribute an additional $10 million in equity which would be used to reduce the principal of the loan to $20 million. In consideration of this contribution and pay-down, the Plaintiff requested that Compass Bank (i) extend the loan for five years (ii) reduce the interest rate and (iii) allow the Plaintiff to make draws on the loan to a $30 million cap. The Plaintiff clearly communicated to Compass Bank or its predecessor that its willingness to arrange for $10 million of fresh equity was contingent on these terms and that unless Compass Bank or its predecessor agreed to these terms, there would be no equity contribution. Compass Bank clearly understood that the five-year term and the ability of the Plaintiff to draw on the remaining balance of the loan for development and carrying costs were critical to the success of the development. Compass Bank accepted this offer and a refinancing on substantially these terms was closed in June, 2008. The Plaintiff arranged for $10 million in new capital and used those funds to reduce the balance owed to Compass Bank on the development loan. At that time, Compass Bank engaged an appraiser to opine as to the fair market value of the Plaintiff's property which would collateralize Compass Bank's loan. That report indicated that the value of this property was $62 million.

On September 10, 2008, Hurricane Ike struck the Houston-Galveston area. The Project sustained substantial damage. The physical damage was fairly quickly repaired, however, the combination the effect of Hurricane Ike and of the national real estate exigency greatly depressed the market for the Project's lots.

Since the re-finance in June, 2008, the Plaintiff has complied with all terms contained in the loan documents. During this time, the Plaintiff has drawn approximately $7 million of the $10 million available. All draws have been approved by Compass Bank. The last was funded on December 4, 2009.

During the course of the development of the Property, the Plaintiff has advanced funds to Hitchcock TIRZ #1 and Flamingo Isles MUD of Galveston County to which it is entitled to reimbursement pursuant to certain terms and conditions. As of the date of this petition, the amount owed to the Plaintiff as reimbursement for the advances is $9.5 million and $22.8 million, respectively. The rights to these reimbursements are collaterally assigned to Compass Bank as additional security for the loan.

On December 7, 2009, the Plaintiff submitted a draw for various expenses including the 2009 POA assessments. Compass Bank initially processed the draw routinely, however, began to stall on completing the process. On December 22, the Plaintiff sent an email to Compass Bank demanding that it fund the draw in accordance with the loan agreement.

On December 23, Compass Bank forwarded correspondence to counsel for the Plaintiff declaring that a material adverse change had occurred in the financial condition and that the loan was, therefore, in default. A copy of the letter is attached hereto as Exhibit "A". Based on this supposed default, Compass Bank refused to fund the pending draw. The letter cited a "recent

appraisal' of the Property and a review of "recent financial statements" as the justification of its declaration of a material adverse change.

After a number of urgent phone calls and e-mails requesting a meeting with Compass Bank, a meeting was arranged on December 29, 2009. Lynn Watkins, his son, Evan Watkins and their counsel met with Compass Bank's counsel. Greg Manuel participated by telephone. At the meeting, the counsel for Compass Bank indicated that Compass Bank would provide a copy of the appraisal that was the basis of the material adverse change determination. Mr. Manuel also stated that, "We have federal regulators all over us. We are not in a position to fund anything else on this loan." The Watkins reiterated to Mr. Manuel that without the funding the Project would have to be closed doing irreparable harm to the Project and the Plaintiff's reputation. Mr. Manuel suggested that the Plaintiff "move" the loan.

As of September 30, 2009, BBVA Compass' troubled assets had doubled from the previous year to nearly $2 billion, equal to approximately 40% of its capital and reserves. Its troubled asset ratio was nearly three times the national average.

As a consequence of Compass Bank's precipitous action, the Plaintiff has been forced to discontinue the bulk of the operations with regard to the Project. Being forced to "shutter" the Project has grossly depreciated its value and impaired the Plaintiff's equity in the Property.

Additionally it is anticipated that the Plaintiff will be forced to file for a Chapter 11 reorganization under the U.S. Bankruptcy Code and will incur substantial expenses as result of Compass Bank's conduct as set forth above.

Later in the day on December 29, 2009, Compass Bank's counsel delivered a copy of the appraisal on which the Bank relied in making its determination that a material adverse change had occurred. The appraisal was performed by CB Richard Ellis and was dated September 21, 2009.

The appraisal opined that the value of the remaining parcels of the Property owned by the Plaintiff was $25.2 million. However, the letter from Compass Bank's agent engaged the appraiser to only appraise the remaining real property and did not express any opinion as to the value of the TIRZ/MUD receivables. In two places in the appraisal report, the appraiser specifically alerts Compass Bank to the fact that value of the TIRZ/MUD receivables is not considered in its report. Compass Bank retained Haginas & Chapman to review the appraisal. At the top of the second page of the review report there is a section in bold that states: **RELEVANT EXTRAORDINARY/SPECIAL ASSUMPTIONS:** ... The values do not take into consideration $22,831,026 in MUD or $10,773,201 in TIRZ receivables.

Compass Bank funded at least two draws of approximately $800,000 *after* the date of the CB Richard Ellis appraisal.

## VI.

## CAUSES OF ACTION

**Breach of Contract.**

The Plaintiff alleges that Compass Bank has breached the loan agreement by (i) declaring a material adverse change when none existed and (ii) refusing to fund a valid draw request.

In the alternative, the Plaintiff alleges that through its course conduct over the last seven years Compass Bank waived any default arising from a material adverse change.

**Breach of Fiduciary Duty and Duty of Good Faith.**

The Plaintiff alleges that a special relationship of trust exists between the Plaintiff and Compass Bank. This special relationship was cemented in the June, 2008 refinance when the Plaintiff paid down Compass Bank's loan by $10 million based on Compass Bank's representations.

The Plaintiff alleges that Compass Bank owes it a duty of good faith in the performance of its obligations pursuant to TEXAS BUS. & COM. CODE §1.203 and pursuant to Texas common law.

Pursuant to the terms of the Loan Agreement, the only possible excuse of Compass Bank not funding the December 7, 2009 draw request was that the Plaintiff was in default. In order to avoid regulatory criticism or in an attempt to misappropriate the Plaintiff's equity in the Project to shore up its own deteriorating financial condition, the Plaintiff alleges that Compass Bank created a bogus default by declaring a material adverse change to attempt to excuse its refusal to fund the draw. The Plaintiff alleges that this conduct was a violation of Compass Bank's fiduciary duty and duty of good faith performance owed to the Plaintiff.

**Fraud**.

The Plaintiff alleges that at the time of the June, 2008 refinance, Compass Bank made false and misleading statements about its intention and ability to fund $10 million in exchange for a $10 million pay down on the loan. In the alternative, Compass Bank failed to disclose facts regarding its financial condition and regulatory standing that might affect its ability to perform on its funding obligation under the loan agreement.

The Plaintiff alleges that these false and misleading statements and/or omissions of facts was material and the Plaintiff relied on them.

The Plaintiff alleges that Compass Bank made these false and misleading statements and/or omitted material facts intentionally to induce the Plaintiff to arrange for a capital infusion to pay down the loan.

The Plaintiff alleges that this conduct constitutes fraud.

**Negligent Misrepresentation**.

Defendant, in the course of conducting its business made representations that were false. Defendant's conduct caused Plaintiff's damages.

**Injunctive Relief.**

Plaintiff has and will suffer irreparable harm as a result of Compass Bank's conduct. There is no adequate remedy at law if Compass Bank is permitted to foreclose on the property. Accordingly, Plaintiff requests the Court enjoin Compass Bank from foreclosing on the property.

## VII.

## DAMAGES AND REMEDIES

The Plaintiff alleges that it has been damaged by the conduct of Compass Bank described herein in an amount far in excess of the minimum jurisdiction. Plaintiff seeks recovery of all actual damages, punitive damages, interest and attorneys' fees to the extent allowed by law. Additionally, Plaintiff seeks an injunction against Defendant prohibiting Defendant from foreclosing on the property in Galveston County. Plaintiff also seeks cancellation of its debt and liens and rescission of the Contract as equitable remedies. Plaintiff previously made demand on Defendant. Accordingly, Plaintiff is entitled to recover its attorneys' fees pursuant to Ch. 38 of the TCPRC and to the extent allowed by law.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff requests that Defendant be cited to appear and answer, and that on final trial Plaintiff have:

(a) Judgment against the Defendant for a sum within the jurisdictional limits of the Court;

(b) Prejudgment and post-judgment interest as provided by law;

(c) Attorneys' fees;

(d) Costs of suit;

(e) Punitive damages; and

(f) Such other and further relief to which Plaintiff may be justly entitled.

>Respectfully submitted,
>
>**THE CAMBERG LAW FIRM, P.C.**
>
>_/s/ Roy Camberg_
>Roy Camberg
>State Bar No. 03674595
>17225 El Camino Real, Suite 444
>Houston, Texas 77058
>Tel: (281) 486-6900
>Fax: (281) 486-4695
>
>**ATTORNEY FOR PLAINTIFF**

**Co-Counsel:**

Scott Krist
The Krist Law Firm
2600 South Shore Blvd., Suite 120
League City, Texas 77573
Tel: (281) 283-8500
Fax: (281) 488-3489
**ATTORNEY FOR PLAINTIFF**

BRADLEY E. RAUCH
(713) 220-9154

LAW OFFICES OF
# HIRSCH & WESTHEIMER, P.C.
700 LOUISIANA, 25TH FLOOR
HOUSTON, TEXAS 77002-2772

www.hirschwest.com
brauch@hirschwest.com

Main Office: (713) 223-5181    Facsimile: (713) 223-9319

December 23, 2009

**_PERSONAL AND CONFIDENTIAL_**

*Via Certified Mail/RRR No. 7160 3901 9848 3726 4211*
*and Via First Class Mail*

Harborwalk, L.P.
Attn: Mr. Lynn B. Watkins
610 West Main, Suite 101
League City, Texas 77573

*Via Certified Mail/RRR No. 7160 3901 9848 3726 4228*
*and Via First Class Mail*

Mr. Lynn B. Watkins
610 West Main, Suite 101
League City, Texas 77573

Re:  **NOTICE OF DEFAULT**

Promissory Note originally dated December 20, 2002, in the original stated sum of $12,000,000, as subsequently modified, renewed and increased to $30,000,000 (the "*Note*"), executed by Harborwalk, L.P. (the "*Borrower*"), originally payable to the order of Texas State Bank, now succeeded in interest by BBVA Compass Bank (the "*Lender*"), and secured, in part, by a Deed of Trust dated December 20, 2002 and recorded under Galveston County Clerk's File No. 2002074939, as subsequently amended (the "*Deed of Trust*"), which grants a first lien on real property in Galveston County, Texas, and governed by a Development Loan Agreement originally dated December 20, 2002, as subsequently increased and modified (the "*Loan Agreement*")

Gentlemen:

This law firm represents BBVA Compass Bank, the Lender, in connection with the above-referenced Note.

The Lender has received and reviewed recent appraisals on the assets of the Borrower, including the real property owned by the Borrower, and has reviewed the Borrower's most recent

930506.20090765/691667.1



Harborwalk, L.P.
Mr. Lynn B. Watkins
December 23, 2009
Page 2

financial statements as well as other information relating to the collateral and the Borrower's development thereof. The appraiser's valuations show a very large decline in the value of the collateral from the collateral value previously used in the loan restructure in 2008. The Lender has determined that a "material adverse change" has occurred in the financial condition of the Borrower, which "material adverse change" creates and Event of Default under Section 1.14(q) of Loan Agreement.

This letter is formal notice to you that the an Event of Default under the loan has occurred and the Lender will not fund any further amounts under the Note pursuant to its rights under Section 2.5 of the Loan Agreement. In addition, the Lender expressly reserves the right to accelerate the outstanding principal balance of the Note and all other sums owing thereunder. As of December 21, 2009, the outstanding principal balance was $26,799,758.00 and accrued and unpaid interest was $173,134.92. Interest continues to accrue currently at the rate of $2,061.39 per day.

Please understand that it is the Lender's intention to preserve all rights and remedies available to it pursuant to the Note, Loan Agreement, Deed of Trust and applicable law. Additionally, any delay or postponement in taking any action shall not constitute a waiver of the Lender's right to take such action at any time. Further, nothing contained herein shall constitute a waiver of any other default, which may currently or hereafter exist, or a waiver of the Lender's right to collect any interest on the past due amounts, attorneys' fees or other collection costs that the Lender may have incurred.

Please feel free to contact me if you have any questions or concerns. Thank you for your attention to this matter.

Very truly yours,

HIRSCH & WESTHEIMER, P.C.

By: _____
Bradley E. Rauch

*Via E-mail*