IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) | |
| HARBORWALK, LP, ET AL., | ) ) | CASE NO. 10-80043-G3-11 |
| Debtors, | ) ) ) | (Jointly Administered) |

MEMORANDUM OPINION

The court has held a hearing on confirmation of the "Joint Plan of Reorganization" (Docket No. 167), as supplemented by the "Amended Plan Supplement to the Debtors' Joint Plan of Reorganization" (Docket No. 252). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered denying confirmation. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Harborwalk, LP ("HWLP"), Harborwalk Marina Operating Co., Ltd. ("HMOC"), and Harborwalk Sales Corp. ("HSC") filed voluntary petitions under Chapter 11 of the Bankruptcy Code on January 25, 2010. The cases of HWLP, HMOC, and HSC (collectively, "Debtors") were jointly administered by order entered by order entered January 28, 2010.

On the petition date, HWLP was the owner of a tract of real property, operated as a master-planned community on the

north shore of Galveston Bay in Galveston County, Texas.  HWLP also asserted a right to recover amounts "reimbursable" through a tax increment reinvestment zone ("TIRZ") administered by the City of Hitchcock, Texas, and through one or more municipal utility districts ("MUD").  HMOC operated a marina on the property, and HSC was a real estate brokerage engaged in selling lots in the community.

On January 27, 2010, Compass Bank ("Compass") filed a proof of claim, in the amount of $27,049,164.45, secured by, <u>inter</u> <u>alia</u>, the real property.  On June 11, 2010, Compass filed a motion for relief from stay with respect to the real property. (Docket No. 139).  The court entered an order, by stipulation, permitting Compass to post the property for a foreclosure to take place on July 6, 2010.  (Docket No. 146).  The court granted the motion for relief from stay, by order entered June 29, 2010. (Docket No. 159).

Lynn Watkins, a manager of Debtors' operating businesses and investor and partner in Debtors, testified that Compass foreclosed on Debtors' interest in the real property. (Tr. 8/17/2010, at p. 6).

Subsequent to the foreclosure, Debtor sought and obtained authority to allow Compass to use its personal property (consisting primarily of computers and inventory).  (Dockets Nos. 160, 163).

2

Debtors' joint plan generally provides for the Debtors to collect the MUD and TIRZ reimbursables, and make distributions to creditors as those reimbursables are collected.  The plan generally provides for Debtors to convey to Compass on account of its secured claim all the remaining assets of HWLP (other than certain cash, the MUD and TIRZ reimbursables, certain accounts receivable, and retainers paid to two firms).  (Docket No. 167).

With respect to the MUD and TIRZ reimbursables, the plan provides generally that they will be disbursed first to pay the expenses of collection (Watkins testified that expenses of collection would be billed by Debtors' incumbent management at a rate of $125 per hour), then to pay administrative expenses of the Chapter 11 cases, then to pay the remaining claim of Compass, pro rata with the secured claim of Lucas Construction Co. ("Lucas"), and the remainder pro rata with general unsecured claims of all three Debtors.  (Docket No. 167).

W. T. Byler Co., Inc. ("Byler"), an entity which asserts an unsecured claim against HWLP,[1] objected to confirmation, on grounds the plan does not provide, with respect to the class of unsecured creditors of HWLP, that each holder of a claim in that class has accepted the plan, or will receive or retain under the plan on account of its claim, property of a value, as of the effective date of the plan, that is not less

---

[1]Counsel for Debtors argued at the hearing on confirmation that Debtors dispute Byler's unsecured claim.  However, Debtors have not, as yet, filed an objection to Byler's claim.

than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7.[2]  (Docket No. 250).

The liquidation analysis attached to Debtors' disclosure statement reflects an estimate of $36,917,000 to $47,508,000 in assets available to pay claims under Chapter 11. (Debtors' Exhibit 1).

The liquidation analysis reflects an estimate of $28,557,000 in assets available to pay claims under Chapter 7. (Debtors' Exhibit 1).

The liquidation analysis reflects that, under Debtors' Chapter 11 scenario, there will be sufficient funds to pay $29,154,928.69 to Compass, and to pay $300,000 in administrative expenses and $574,956.51 to unsecured creditors, leaving approximately $6.7 million to $17.3 million for equity. (Debtors' Exhibit 1).

The liquidation analysis reflects that, under Debtors' Chapter 7 scenario, there will be insufficient funds to pay Compass' claim in full.  Debtors also estimate $800,000 in administrative expenses, and an additional $500,000 in unsecured claims against HWLP.  Debtors estimate that in Chapter 7 they will be $2,037,928.69 short of having any funds available to pay anything on account of unsecured claims.  (Debtors' Exhibit 1).

---

[2] Byler's counsel announced at the hearing on confirmation that the other grounds set forth in Byler's written objection had been resolved.

4

Watkins testified that Debtors' settlement with Compass, which is encompassed in the joint plan, provides for a credit against Compass' claim with respect to the real property on which Compass foreclosed, in the amount of $26 million.  (Tr. 8/17/2010, at p. 11).

The primary difference between the Debtors' estimate of funds available in liquidation under Chapter 7 as compared to those available under Chapter 11 is that litigation would yield a credit against Compass' claim of only $17,640,000.  (Debtor's Exhibit 1).

Watkins testified that, to reach the amount of $17,640,000, he "used a 70 percent factor," based on his history and knowledge of the business.  He testified that he applied this 70 percent factor to the value of the property as appraised by CB Richard Ellis on September 21, 2009.  The CB Richard Ellis appraisal is not in evidence.  (Tr. 8/17/2010, at p. 21).  The court takes judicial notice that $17,640,000 is 70 percent of $25,200,000.

Watkins testified that he has been working in the development and construction business since 1970.  He testified that, during the past 30 years, he has developed two dozen projects, and has done five or six projects involving public financing vehicles such as TIRZ and MUD reimbursables.  (Tr. 8/17/2010, at p. 4-5).  He testified that he is not certified as a real estate appraiser.  He testified that, other than his

5

qualifications as a long-term real estate developer, he has no qualifications to evaluate TIRZ receivables.  (Tr. 8/17/2010, at p. 32).

Watkins' testimony was the only evidence presented with respect to the question of the valuation of the credit to be provided based on Compass' foreclosure of the real property.

### Conclusions of Law

Section 1129(a)(7) of the Bankruptcy Code provides in pertinent part that the plan must provide:

> With respect to each impaired class of claims or interests-
>
>> (A) each holder of a claim or interest of such class-
>>
>>> (i) has accepted the plan; or
>>>
>>> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7).

The plan proponent has the burden of proof as to compliance with Section 1129(a) by a preponderance of the evidence.  In re Briscoe Enters., Ltd. II, 994 F.2d 1160 (5th Cir. 1993), cert. den., 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 451 (1993).

The primary difference between Debtors' Chapter 7 liquidation analysis and Chapter 11 liquidation analysis is the

reduced amount of the credit to be provided based on Compass' foreclosure of the real property.  The difference is sufficiently large that none of the other numbers in the liquidation analysis have a material impact on whether the plan provides more for unsecured creditors than they would receive under Chapter 7.[3]

In the instant case, the only evidence regarding the reasonableness of Debtors' liquidation analysis is Watkins' testimony that he used a 70 percent factor, based on his history and knowledge of the business.  Watkins' testimony is uncontroverted, thus the only question which must be resolved is whether his testimony should be accorded any weight at all.

The court finds and concludes that Watkins' testimony should be accorded zero weight, on the question of the amount of a credit to be accorded to the real property following Compass' foreclosure.  Rule 701 of the Federal Rules of Evidence permits opinion testimony by lay witnesses:

> "limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Rule 701, Fed. R. Evid.

---

[3] For example, if the amount of the credit under a Chapter 7 liquidation were either the $26,000,000 agreed amount provided in the plan, or the $25,200,000 purportedly contained in the CB Richard Ellis appraisal, there would be sufficient funds to pay unsecured creditors in full.

Watkins' testimony regarding the 70 percent factor is opinion testimony, and is not helpful.  Watkins is not an expert on the likely results of litigation.  His opinion is not rationally based on his perception, but rather depends on the CB Richard Ellis appraisal.  His opinion is based on specialized knowledge; yet Debtors have failed to establish a foundation to support a finding that he has such knowledge.  Moreover, Watkins holds a reason for his opinion to be biased:  If the plan is confirmed, he stands to earn $125 per hour for his efforts in collecting the MUD and TIRZ reimbursables.  The court concludes that Watkins' testimony on this issue should be accorded zero weight.  The court concludes that Debtors have failed to meet their burden of proof with respect to the question of whether the plan satisfies Section 1129(a)(7) of the Bankruptcy Code.

Based on the foregoing, a separate Judgment will be entered denying confirmation of the "Joint Plan of Reorganization" (Docket No. 167), as supplemented by the "Amended Plan Supplement to the Debtors' Joint Plan of Reorganization" (Docket No. 252).

Signed at Houston, Texas on September 10, 2010.

*Letitia Z. Paul*
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE